# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff

vs

DAVID R. SCOTT,
    Defendant.

Case No. 1:09-CR-100(1)
Barrett, J.
Hogan, M.J.

**REPORT AND RECOMMENDATION**

This matter is before the Court on defendant David R. Scott's motion to dismiss the indictment (Doc. 30), the government's response in opposition (Doc. 34), and Scott's reply memorandum. (Doc. 37). Oral argument on the motion was held on July 27, 2010. (Doc. 41). For the reasons that follow, the undersigned recommends the motion to dismiss be denied.

## BACKGROUND

On August 5, 2009, defendant David Scott and his co-defendant Donald Copley, Jr. were indicted on bank robbery charges in violation of 18 U.S.C. § 2113(a) and 2. (Doc. 2). A warrant for their arrests was issued that same day. (Doc. 3).

On August 12, 2009, Mr. Copley was arrested. He pled guilty to the charges on October 13, 2009, and was subsequently sentenced to 58 months imprisonment. (Docs. 18, 19, 23).

Meanwhile, defendant Scott was awaiting trial in the Perry County, Ohio Court of Common Pleas on an unrelated state robbery charge. Scott was convicted and sentenced to an 18 month term of imprisonment. On January 14, 2010, defendant Scott arrived at the Ohio Department of Rehabilitation and Correction to complete his 18 month sentence on the state court criminal conviction.

On January 25, 2010, Scott notified the prison records officer that he wished to resolve any pending criminal charges against him. (Doc. 25, Exh. B). The records officer then notified the Hamilton County, Ohio Clerk of Court of Mr. Scott's request. *Id.* However, the records officer did not notify or contact the federal court or United States Marshal about Scott's request on the outstanding federal criminal charges.

On March 5, 2010, defendant Scott sent a letter to the prison records department inquiring about the federal warrant and stating he would like to assert his speedy trial rights. He was advised by the records officer that no holder had been placed on the federal warrant. (Doc. 25, Exh. C). Scott was also advised that federal charges are processed differently than state common pleas charges and that the "ODRC [Ohio Department of Rehabilitation and Correction] does not process fast and speedy for federal charges." *Id.* Scott was advised that forms explaining step-by-step instructions are mailed to the inmate with the federal detainer. *Id.* There is no indication that a federal detainer has ever been lodged against Scott.

On April 21, 2010, defendant Scott filed a motion to dismiss the indictment in this federal court alleging a violation of his speedy trial rights. (Doc. 25). The government filed two applications for a writ of habeas corpus ad prosequendum on May 13 and June 1, 2010 respectively to have defendant Scott transported from the Lebanon Correctional Institution for his initial appearance. (Docs. 26, 28). Scott's initial appearance and arraignment were held on June 30, 2010. (Doc. 31). His trial is scheduled to begin on September 7, 2010. (Doc. 35).

## ANALYSIS

Defendant Scott requests dismissal of the indictment with prejudice pursuant to the Sixth Amendment of the United States Constitution, the Speedy Trial Act, and the Interstate Agreement on Detainers (IAD) based on alleged violations of his right to a speedy trial.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a speedy trial: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "The remedy for a Sixth Amendment speedy trial violation is dismissal with prejudice." *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir.), cert. denied, 550 U.S. 952 (2007) (citing *United States v. Bilsky,* 664 F.2d 613, 617 (6th Cir. 1981)).

In determining whether a defendant has been deprived of his right to a speedy trial, the Court must assess and balance four factors, none of which is outcome-determinative. *See Barker v. Wingo*, 407 U.S. 514, 533 (1972). These factors include: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. *See also Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

The threshold finding for a Sixth Amendment speedy trial violation is the length of delay. *Doggett v. United States*, 505 U.S. 647, 652 (1992). Such a delay must be "presumptively prejudicial" before assessment of the other *Barker* factors is necessitated. *Id.* Delays approaching one year are generally considered presumptively prejudicial. *Maples,* 427 F.3d at 1026 (citing *Doggett*, 505 U.S. at 652 n.1). "The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier." *Maples*, 427 F.3d at 1026 (citing *United States v. Marion,* 404 U.S. 307, 320 (1971); *Redd v. Sowders,* 809 F.2d 1266, 1269 (6th Cir.

1987)). Whether the delay is presumptively prejudicial is dependent upon the nature and complexity of the crime. *Redd,* 809 F.2d at 1269. The more serious the crime, the shorter the toleration of delay. *Id.* (citing *Barker*, 407 U.S. at 531).

In this case, defendant Scott was indicted on charges of bank robbery in violation of 18 U.S.C. § 2113(a) and 2 on August 5, 2009. (Doc. 2). He was arraigned on June 30, 2010, and trial is scheduled for September 7, 2010. (Docs. 31, 35). The delay from the indictment to the date of Scott's scheduled trial is 13 months and therefore deemed to be presumptively prejudicial. Accordingly, the Court must examine the other three *Barker* factors.

The second factor the Court must consider is the government's reason for the delay in bringing a defendant to trial. Intentional delays designed to hamper the defense or gain a tactical advantage must be weighed heavily in favor of a speedy trial violation, whereas neutral or valid reasons deserve much less weight. *Barker*, 470 U.S. at 531.

Scott contends that his co-defendant Copley was promptly arrested, brought before the federal court, and had the charges against him resolved within months of the federal indictment. Scott hypothesizes that the government's delay in bringing Scott before the federal court was tactical and may have been related to the anticipated testimony of his co-defendant.

The government asserts there was no such tactical reason for the delay. Rather, the government states that at the time of defendant Scott's federal indictment, Scott was awaiting trial in Perry County, Ohio on an unrelated state robbery charge. The government contends that Scott did not become available for prosecution on the federal charge until the state court resolved the pending state charge and Scott was transferred to the custody of the Ohio Department of Corrections in January 2010. The government contends the delay in bringing Scott before the

federal court on the criminal charge was justified based on the necessity of allowing the state to prosecute its own case against Scott first without interference from the federal government.

Scott does not dispute the government's assertion that he was in the custody of the State of Ohio and being actively prosecuted in state court on an unrelated criminal charge at the time of his federal indictment. He also does not dispute that he was not transferred to the custody of the Ohio Department of Corrections until January 14, 2010 to complete his state court sentence.

In a circumstance such as this, where a defendant has pending charges in different jurisdictions, principles of comity dictate that the jurisdiction possessing custody over the defendant resolve its criminal proceedings before relinquishing custody to another jurisdiction. "To do otherwise would be to mire the state and federal systems in innumerable opposing writs, to increase inmate transportation back and forth between the state and federal systems with consequent additional safety risks and administrative costs, and generally to throw parallel federal and state prosecutions into confusion and disarray." *United States v. Watford*, 468 F.3d 891, 903 (6th Cir. 2006) (internal quotation and citation omitted). "[W]aiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government." *Id.* Thus, the delay which was attributable to the state court prosecution of Scott was justified and weighs in favor of the government.

Next, there was a nearly five month delay between resolution of the state court charges in January 2010 and the government's filing of its first petition for a writ to obtain Scott's appearance in federal court. The government argues that it did not move to secure Scott's appearance because it did not have notice of Scott's speedy trial request until he moved to dismiss the indictment. The government asserts that Scott's inquiries to the prison records clerk do not

5

constitute notice to the government because neither the United States nor the United States District Court were ever served with notice of Scott's speedy trial request as required under the IAD. Scott counters that the government failed to lodge a detainer against him and that such failure caused Scott's delay in exercising his speedy trial rights.

On balance, this delay is one attributable to the government to the extent the government bases its delay in seeking Scott's appearance on Scott's alleged failure to comply with the technical requirements of the IAD. Scott cannot be faulted in not noticing the proper federal officials when the government failed to file a detainer in the first place. Nevertheless, in the absence of any evidence of bad faith by the government, this delay does not weigh heavily against the government. *See United States v. Williams*, 231 Fed. Appx. 457, 466 (6th Cir. 2007).[1]

The defendant's assertion of his speedy trial right is another relevant factor. "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 470 U.S. at 532.

In this case, defendant Scott contacted the prison records clerk to ask about any outstanding criminal charges against him in January 2010 after the state charges were concluded. The prison records clerk mistakenly contacted state authorities in response. Had the federal government filed a federal detainer against Scott, which would have explained the procedural steps Scott needed to take to correctly assert his speedy trial rights, then Scott would have been able to assert his right to a speedy trial much earlier. Scott's motion to dismiss, which was his

---

[1] The one month delay between the Court's issuance of a writ of habeas corpus ad prosequendum and defendant Scott's initial appearance before the magistrate judge is not atypical, is fairly customary in this Court's experience, and does not count against the government.

first assertion of his right to a speedy trial, was prompt under the circumstances and does not weigh against him.

Finally, prejudice to the defendant must also be considered in assessing whether a defendant has been deprived of his right to a speedy trial under the Sixth Amendment. The right to a speedy trial is designed to limit a defendant's oppressive pretrial incarceration, minimize anxiety and concern of the accused, and limit the possibility that the defense will be impaired by a lengthy delay in being brought to trial. *Barker*, 470 U.S. at 532. Delays in bringing a defendant to trial run the risk that witnesses will disappear and memories will fade. *Id*. Lengthy pretrial incarceration may also hamper a defendant's ability to gather evidence in support of his defense. *Id*. Nevertheless, a defendant must provide "particular evidence of prejudice" and may not rely on vague and unsupported assertions. *See United States v. Bass*, 460 F.3d 830, 837 (6th Cir. 2006), *cert. denied*, 551 U.S. 1124 (2007). *See also United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003) ("A defendant must show that 'substantial prejudice' has resulted from the delay.").

Here, Scott does not argue that he was subjected to oppressive pretrial incarceration or anxiety and concern over the pending federal charges. Rather, Scott generally argues his defense has been impaired by the delay. He contends that during the delay, he was incarcerated in an Ohio prison without access to an attorney because of his indigency, and was not able to preserve favorable evidence, maintain contact with defense witnesses, or conduct any investigation.

Scott's assertions are unsupported by any evidence. He has failed to produce "any *evidence* of particularized trial prejudice." *Watford*, 468 F.3d at 908 (emphasis added). He has not specifically identified the trial evidence he has been unable to preserve. Nor does he identify

the witnesses he has not been able to contact or their anticipated testimony. The Sixth Circuit has held that "a defendant must pinpoint how the delay prejudiced his defense with specificity." *United States v. Mundt,* 29 F.3d 233, 236 (6th Cir. 1994). Without such a showing by defendant Scott in this case, the Court cannot discern any actual prejudice from Scott's unsupported and generalized assertions. *See Bass*, 460 F.3d at 838.

Balancing the four *Barker* factors in this case, the Court concludes that Scott has not been denied his right to a speedy trial as guaranteed by the Sixth Amendment. The delay here was in large part due to the State of Ohio's prosecution of Scott on unrelated charges. While Scott's assertion of his right was relatively prompt, he has failed to present evidence of actual prejudice resulting from the delay. Scott has presented no evidence showing that a particular defense witness has now become unavailable or that other evidence cannot be obtained. Given the present record before the Court, the Court determines that Scott's speedy trial right under the Sixth Amendment has not been violated.

Defendant Scott also contends his rights to a speedy trial under the Interstate Agreement on Detainers, 18 U.S.C. App., and the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq., have been violated and justify the dismissal of the indictment. He contends the government failed to promptly set his case for trial as required by 18 U.S.C. § 3161(j)(1). (Doc. 37 at 5).

Article III(a) of the IAD provides for a speedy trial:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint *on the basis of which a detainer has been lodged* against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the

8

> place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint.

18 U.S.C. app. 2, § 2, art. III(a) (emphasis added).

> The Speedy Trial Act provides in relevant part:
>
> (j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution he shall promptly -
> (A) undertake to obtain the presence of the prisoner for trial; or
> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner of his right to demand trial.

18 U.S.C. § 3161(j).

The Court finds no violation of the IAD in this case. A prerequisite to application of the IAD is the lodging of a detainer against a defendant by the government. *United States v. Mauro*, 436 U.S. 340, 364 n.30 (1978). "[T]he provisions of the Agreement are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated." *United States v. Dixon*, 592 F.2d 329, 333 (6th Cir.), *cert. denied*, 441 U.S. 951 (1979) (citing *United States v. Mauro*, 436 U.S. 340 (1978)). *See also United States v. Donaldson*, 978 F.2d 381 (7th Cir. 1992). "It is only when the Government does file a detainer that it becomes bound by the Agreement's provisions." *Mauro*, 436 U.S. at 364 n. 30.

In this case, it is undisputed that no federal detainer was lodged against Scott in Ohio. Because a detainer was never filed against Scott, the protections of the IAD, including the speedy trial provisions, were never triggered. *See Mauro,* 436 U.S. at 361 (writ of habeas corpus ad prosequendum does not constitute a "detainer" within the meaning of IAD and therefore, application of IAD not proper). *See also Perry v. United States*, 25 F.3d 1058 (10th Cir. 1994)

9

(unpublished), 1994 WL 258730 (where federal government filed no detainer provisions of IAD not applicable). *Cf. United States v. Koufus*, 280 F. Supp.2d 647, 650 (W.D. Ky. 2003) (withdrawal of detainer removes prisoner from purview of IAD as presence of detainer triggers IAD, not mere presence of charges in another jurisdiction). In the absence of the filing of a detainer against Scott, the IAD has not been violated.

Scott suggests that the government nevertheless violated his rights by not filing a detainer against him when officials knew he was in the custody of the State of Ohio. Contrary to defendant's contention, the government was not required to file a detainer against Scott. *See Mauro*, 436 U.S. at 364 n.30 (the government "may obtain a state prisoner by means of an *ad prosequendum* writ without ever filing a detainer; in such a case, the Agreement is inapplicable."). The United States could obtain temporary custody of defendant Scott by either filing a detainer against him with Ohio authorities or by obtaining a writ of habeas corpus ad prosequendum. *See United States v. Beard*, 41 F.3d 1486, 1489 n.9 (11th Cir. 1995) (noting that § 3161(j)(1) is written in the disjunctive and rejecting state prisoner's argument that IAD required federal government to place a detainer on him instead of obtaining federal custody by means of habeas corpus ad prosequendum); *see also United States v. Roper,* 716 F.2d 611, 613-14 (4th Cir. 1983). Thus, the government's failure to file a detainer against Scott, in itself, did not violate § 3161(j)(1).

Finally, to the extent Scott argues the government violated § 3161(j)(1) by neither filing a detainer against him nor "promptly" procuring his presence for trial, dismissal of the indictment is not an available remedy for an alleged violation of § 3161(j)(1). *United States v. Robinson*, 455 F.3d 602, 606 (6th Cir. 2006) (citing *United States v. Walker*, 255 F.3d 540, 542 (8th Cir. 2001);

10

*United States v. Lainez-Leiva*, 129 F.3d 89, 91 (2nd Cir. 1997); *United States v. Guzman*, 85 F.3d 823, 829 n. 4 (1st Cir. 1996); *United States v. Wickham*, 30 F.3d 1252, 1255 (9th Cir. 1994); *United States v. Dawn*, 900 F.2d 1132, 1135-36 (7th Cir. 1990); *United States v. Anderton*, 752 F.2d 1005, 1008 (5th Cir. 1985)). In *Robinson*, the Sixth Circuit joined every other circuit court to decide the issue. Those courts have reasoned that while Congress explicitly authorized dismissal of an indictment for some Speedy Trial Act violations, § 3161(j) violations are not among them. *See Lainez-Leiva*, 129 F.3d at 91. Thus, even if the government violated the dictates of § 3161(j)(1), dismissal of the indictment would be improper.

**IT IS THEREFORE RECOMMENDED THAT** defendant's motion to dismiss the indictment be **DENIED**.

Date: 8/5/10

Timothy S. Hogan
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br><br>vs<br><br>DAVID R. SCOTT,<br>Defendant. | Case No. 1:09-CR-100(1)<br>Barrett, J.<br>Hogan, M.J. |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).